UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SARA STILLINGS,                                17-CV-424-MJR
                                               DECISION AND ORDER
                Plaintiff,

        -v-

COMMISSIONER OF SOCIAL SECURITY,[1]

                Defendant.
_____

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 17).

Plaintiff Sara Stillings brings this action pursuant to 42 U.S.C. §405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying her Social Security Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Stillings' motion (Dkt. No. 10) is denied and the Commissioner's motion (Dkt. No. 15) is granted.

## **BACKGROUND**

On June 6, 2013, Stillings filed an application for DIB alleging disability since May 2, 2011 due to fibromyalgia, chronic migraines, a back impairment, cervical strain, knee issues, tinnitus, depression/anxiety, irritable bowel syndrome, and asthma. (*See* Tr. 130-33, 144, 147).[2] Born in 1985, Stillings was twenty-six-years old at the time of her May 2, 2011 onset date. (Tr. 39). She served in the Army from November 2003 until March

---

[1] The Clerk of Court is directed to amend the caption accordingly.
[2] References to "Tr." are to the administrative record in this case.

2004, when she received a medical entry level separation for a back injury she suffered during training. (Tr. 42-44, 590). She worked as a cook, security officer, and cashier after leaving the Army, but she has not worked since her alleged onset date. (Tr. 48-50, 148-49). Stillings' DIB application was denied on October 3, 2013 (Tr. 61, 74-81), after which she requested a hearing before an Administrative Law Judge (Tr. 82). On August 6, 2015, Stillings, represented by counsel, appeared before Administrative Law Judge Grenville W. Harrop, Jr. (the "ALJ") for a hearing. (Tr. 36-60). On August 26, 2015, the ALJ issued his decision denying Stillings' DIB claim. (Tr. 17-35). Stillings requested review by the Appeals Council (Tr. 16), but on March 20, 2017, the Appeals Council denied Stillings' request, making the ALJ's decision the final decision of the Commissioner (Tr. 1-6). This action followed.

## DISCUSSION

I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*,

312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's

regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to

the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

   III.   *The ALJ's Decision*

The ALJ first found that Stillings was insured for DIB through September 30, 2014. (Tr. 22). The ALJ then followed the required five-step analysis for evaluating Stillings' DIB claim. Under step one, the ALJ found that Stillings did not engage in substantial gainful activity from her alleged onset date of May 2, 2011 through her date last insured of September 30, 2014. (*Id.*). At step two, the ALJ concluded that Stillings had the following severe impairments: "a disorder of muscle, and fibromyalgia." (*Id.*). At step three, the ALJ found that Stillings did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (Tr. 25). Before proceeding to step four, the ALJ assessed Stillings' RFC as follows:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform light work as defined in [20 C.F.R. §404.1567(b)],[3] except the claimant: had a mild limitation, which is defined as a slight limitation, in lifting heavy objects, bending, carrying, kneeling and squatting; should have avoided dust, irritants and tobacco exposure; was able within normal limits to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, make appropriate decisions, relate adequately with others, and appropriately deal with stress; and had a moderate impairment, which is a slight limitation in an individual generally functioning well, in performing complex tasks independently.

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §404.1567(b).

(*Id.*). Proceeding to step four, the ALJ found that Stillings could not perform her past relevant work as a cook, security officer, cashier-checker, or sandwich maker. (Tr. 29). At the fifth step, the ALJ considered Stillings' age, education, work experience, RFC, and the testimony of a vocational expert to conclude that she can perform jobs that exist in significant numbers in the national economy, such as fast food worker, cashier II, and price marker. (Tr. 29-30). Accordingly, the ALJ found that Stillings can successfully adjust to other work and, therefore, that she has not been under a disability within the meaning of the Act from her alleged onset date of May 2, 2011 through her date last insured of September 30, 2014. (Tr. 30).

    IV.    *Stillings' Challenges*

Stillings challenges the Commissioner's disability decision on two grounds: first, that the ALJ failed to account for all of her impairments in his decision, and second, that the ALJ improperly assessed the opinion evidence in the record. (*See* Dkt. No. 10-1 (Stillings' Memo. of Law)). The Court will address each argument in turn.

    A.  *Impairments*

Stillings first argues that the ALJ failed to list certain impairments — specifically, fibromyalgia, myofascial pain, depression, borderline personality disorder, Cluster B traits,[4] and cervical spondylosis — as severe impairments and also ignored these impairments in assessing her RFC.

---

[4] "Cluster B personality disorders are characterized by dramatic, overly emotional or unpredictable thinking or behavior. They include antisocial personality disorder, borderline personality disorder, histrionic personality disorder and narcissistic personality disorder." Mayo Clinic, Diseases & Conditions, https://www.mayoclinic.org/diseasesconditions/personality-disorders/symptoms-causes/syc-20354463 (last visited June 5, 2018).

At step two of the sequential evaluation process, a claimant has the burden of showing that she has an impairment or combination of impairments that is "severe."  20 C.F.R. §404.1520(c).  If the claimant has at least one severe impairment, the ALJ proceeds to the next step of the sequential evaluation process.  *See* 20 C.F.R. §404.1520(a)(4), (c).  So long as the ALJ finds at least one severe impairment at the second step of the process and goes on to consider all of the claimant's other, non-severe impairments at the remaining steps, the failure to find additional severe impairments at the second step is harmless error.  *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (summary order); *see also* 20 C.F.R. §404.1545(a)(2) (directing the ALJ to consider both severe and non-severe impairments in assessing the claimant's RFC).

Here, the ALJ found two of Stillings' impairments — fibromyalgia and myofascial pain[5] — to be severe, and three other impairments — migraines, depression, and borderline personality disorder — to be non-severe.  (Tr. 22-23).  To the extent the ALJ erred in not including Stillings' migraines, depression, and borderline personality disorder in his list of severe impairments, the error was harmless because the ALJ proceeded beyond step two of the sequential evaluation process and considered these and other impairments in assessing Stillings' RFC.  In particular, the ALJ discussed Stillings' treatment for migraines, depression, borderline personality disorder, cervical spondylosis, irritable bowel syndrome, gastroesophageal reflux disorder, back, neck, and knee pain, sprains of the sacroiliac region, photosensitivity disorders, asthma, insomnia, and tinnitus.

---

[5]  Myofascial pain syndrome is a chronic pain disorder that causes pain in the muscles and sometimes in seemingly unrelated parts of the body. Mayo Clinic, Diseases & Conditions, https://www.mayoclinic.org/diseases-conditions/myofascial-pain-syndrome/symptomscauses/syc-20375444 (last visited June 5, 2018).  The ALJ's decision refers to Stillings' myofascial pain as "a disorder of muscle."  (Tr. 22).

(Tr. 22-24, 26-28). As discussed in Point IV.B *infra*, the ALJ appropriately relied on the opinion evidence in the record to conclude that Stillings retains the RFC to perform less than a full range of light work notwithstanding these impairments. Contrary to Stillings' position, simply because she has multiple impairments does not render her disabled under the Act. *See Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008) (summary order) (noting that a "mere diagnosis . . . does not mandate a finding of disability").

Relatedly, Stillings argues that the ALJ's RFC assessment is flawed because the ALJ did not fully credit her statements regarding the intensity, persistence, and limiting effects of her symptoms. It is well settled that it is the role of the ALJ, not the Court, to appraise the credibility of witnesses, including the claimant. *See Carroll*, 705 F.2d at 642. "The ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged." *Fisk v. Colvin*, No. 14-CV-931S, 2017 WL 1159730, at *5 (W.D.N.Y. Mar. 29, 2017). The Commissioner has set forth a two-step process to evaluate a claimant's testimony regarding her symptoms. First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or other symptoms alleged by the claimant. Second, if the ALJ finds that the claimant is so impaired, he must then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about her pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility by assessing the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain or other symptoms; (3) precipitating and aggravating factors; (4)

the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain or other symptoms; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain or other symptoms. *See* 20 C.F.R. §404.1529; Social Security Ruling ("SSR") 16-3P, 2017 WL 5180304 (Oct. 25, 2017); SSR 96-7P, 1996 WL 374186 (July 2, 1996). This two-step process applies to claimants with fibromyalgia, which is a condition characterized primarily by widespread pain. *See* SSR 12-2P, 2012 WL 3104869, at *2 (July 25, 2012).

Here, at the first step of the credibility analysis, the ALJ found that Stillings' medically determinable impairments could reasonably be expected to cause her alleged symptoms, but at the second step, the ALJ found Stillings' statements concerning the intensity, persistence, and limiting effects of her symptoms to be only "partially credible." (Tr. 26, 28). The ALJ's finding comports with the applicable legal principles and is supported by substantial evidence. The ALJ noted, for instance, that Stillings' daily activities of cooking, cleaning, laundry, shopping, managing her own money, driving, reading, traveling, and socializing with friends and family cut against her claim of total disability. (Tr. 24, 28); 20 C.F.R. §404.1529(c)(3)(i). The ALJ also noted that Stillings was able to attend Buffalo State College, where she maintained a 2.5 grade point average with a major in business and a minor in photography. (Tr. 26, 28); *see Dingman v. Berryhill*, No. 6:16-CV-06107(MAT), 2017 WL 1100619, at *9 (W.D.N.Y. Mar. 24, 2017) ("Courts in this Circuit have found that an ALJ may properly consider a claimant's ability to attend college or other schooling — even with accommodations — as among the

claimant's 'daily activities[.]'"). The ALJ also appropriately considered the location, duration, frequency, and intensity of Stillings' symptoms, including her pain, by addressing, among other things, her fibromyalgia-related pain, chronic headaches, trigger points, and tenderness in her joints, bones, and muscles. (Tr. 26-27); 20 C.F.R. §404.1529(c)(3)(ii). Turning to Stillings' use of medication, the ALJ discussed Stillings' history of narcotics abuse, how she "self-medicat[ed]" with marijuana, and how she declined to undergo toxicology screening necessary to obtain a prescription for Lortab. (Tr. 27); 20 C.F.R. §404.1529(c)(iv). The ALJ also discussed how Stillings received no more than "routine" medical care "with largely benign findings on mental status examination." (Tr. 28); 20 C.F.R. §404.1529(c)(v)). Stillings contends that her psychiatric issues precluded her from seeking more than routine medical care, but she does not cite any evidence in the record to support such a finding. Similarly, Stillings argues that her unstable housing situation and personal issues interfered with her treatment, but the ALJ concluded otherwise, noting that Stillings moved into her own apartment in 2014 and could socialize with friends and family notwithstanding her impairments. (Tr. 24, 28). The ALJ also found it "[p]articularly telling" that Stillings declined pain management treatment due to her school schedule. (Tr. 28). As the ALJ put it in his decision, it is reasonable to assume that if Stillings truly had debilitating pain, she would "pursue all reasonable measures to alleviate it," notwithstanding her busy schedule. (*Id.*). Accordingly, for these reasons, the ALJ's credibility decision, as well as his RFC assessment, are supported by substantial evidence. Stillings' first objection to the ALJ's disability decision is thus without merit.

B. *Opinion Evidence*

Stillings next argues that the ALJ erred by giving great weight to the opinions of Dr. Susan Santarpia, Dr. M. Totin, and Dr. Donna Miller.

The Commissioner's regulations direct an ALJ to consider certain factors in weighing a medical opinion — namely, the examining and treatment relationship, the evidence supporting the opinion, the consistency of the opinion with the record as a whole, whether the medical source is a specialist, and any other factor that tends to support or contradict the opinion. *See* 20 C.F.R. §404.1527(c)(1)-(6). A "slavish recitation" of each factor is not required so long as the ALJ's reasoning and adherence to the regulation are clear. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order). The ALJ did adhere to the regulation in assessing the opinion evidence in this case, and the opinions he relied upon provide substantial evidence in support of his conclusion that Stillings retains the RFC to perform some light work.

In September 2013, Stillings visited Dr. Santarpia for a psychiatric evaluation in connection with her DIB claim. (Tr. 781-85). Dr. Santarpia performed a mental status examination before opining that Stillings had a mild impairment in performing complex tasks independently, but could follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, make appropriate decisions, relate adequately with others, and deal appropriately with stress within normal limits. (Tr. 783-84). According to Dr. Santarpia, Stillings' mental impairments did not appear to interfere with her ability to function on a daily basis. (Tr. 784). In assigning Dr. Santarpia's opinion great weight (Tr. 24), the ALJ found the opinion consistent with other evidence in the record, including

treatment notes from psychiatrists at the VA Medical Center. (Tr. 24); *see* 20 C.F.R. §404.1527(c)(4). The ALJ also considered and discussed Dr. Santarpia's largely benign examination findings. (Tr. 23); 20 C.F.R. §404.1527(c)(3). In particular, the ALJ noted that although Stillings displayed poor insight and judgment, her manner of relating and overall presentation were adequate, her appearance was unremarkable, there was no aberration of speech, her thought processes were coherent and goal directed, her affect was of full range and appropriate in speech and thought content, her mood was euthymic, and her attention, concentration, and memory skills were intact. (Tr. 23). Stillings argues that Dr. Santarpia ignored her poor insight and judgment in rendering her opinion, but it seems that Dr. Santarpia did in fact account for this finding when she concluded that Stillings is mildly impaired in performing complex tasks independently.

The ALJ also gave great weight to the opinion of Dr. Totin (Tr. 24), the state agency review psychologist who reviewed the record in October 2013 and determined that Stillings had no repeated episodes of decompensation, no restriction in activities of daily living, and only mild restrictions in maintaining social functioning, concentration, persistence, and pace (Tr. 66-67). As with Dr. Santarpia's opinion, the ALJ found Dr. Totin's opinion consistent with other evidence in the record. (Tr. 24); *see* 20 C.F.R. §404.1527(c)(4).

With regard to Stillings' physical limitations, the ALJ assigned great weight to Dr. Miller (Tr. 28), who Stillings visited in September 2013 for an internal medicine examination in connection with her DIB claim (Tr. 786-90). After performing a physical examination, Dr. Miller opined that Stillings had "mild limitation for heavy lifting, bending, carrying, kneeling, and squatting," and that she "should avoid dust, irritants, and tobacco

exposure which may exacerbate her asthma." (Tr. 789). The ALJ found Dr. Miller's opinion consistent with other evidence in the record and not contradicted by a treating source opinion. (Tr. 28-29); 20 C.F.R. §404.1527(c)(4).[6] The ALJ also considered and discussed Dr. Miller's largely normal examination findings (Tr. 26-27); 20 C.F.R. §404.1527(c)(3). On examination with Dr. Miller, Stillings was in no acute distress, had a normal gait, normal heel and toe walking, no sensory deficits, and full strength in her arms and legs. (Tr. 787-89). On range of motion testing, she had somewhat limited lumbar spine extension, but otherwise had full range of motion in her back, neck, shoulders, elbows, wrists, hips, knees, and ankles. (Tr. 788-89).[7]

Stillings argues that the ALJ should have given less weight to the opinions of Dr. Santarpia, Dr. Totin, and Dr. Miller, and more weight to the 60% disability rating she received from the VA Medical Center. However, it is the ALJ's role to weigh the evidence in the record, and "[a] determination made by another agency regarding a claimant's disability is not binding on the Social Security Administration." *Atwater*, 512 F. App'x at 70. The ALJ acknowledged that Stillings had a 60% service-connected disability rating

---

[6] Stillings argues that the ALJ should have requested an opinion from one of her treating sources, but an ALJ's failure to request a medical source statement from a treating source does not require remand where, as here, the record contains sufficient evidence from which the ALJ can assess the claimant's residual functional capacity. *See Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (summary order); *see also Pellam v. Astrue*, 508 F. App'x 87, 89-90 (2d Cir. 2013) (summary order) (finding no error in failure to acquire medical source statement from treating physicians where the ALJ's RFC assessment was supported by the opinion of a consultative examiner and the ALJ had treatment notes from the treating physicians).

[7] Stillings contends that the ALJ failed to obtain x-rays and MRIs referenced in Dr. Miller's report. (Tr. 786). However, it is unclear when these x-rays and MRIs were taken at the VA Medical Center, and Stillings does not know the results of them. (*Id.*). Given that the record in this case contains hundreds of pages of treatment notes from the VA Medical Center, and because Stillings' counsel did not lodge any objection to the record at the hearing (Tr. 38), the Court cannot say that the record contains an obvious gap that would warrant remand. *See Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.") (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)).

(30% for depression and 30% for "medical conditions") (Tr. 26), but decided to give more weight to the opinions of Dr. Santarpia, Dr. Totin, and Dr. Miller. As already discussed, the ALJ's decision to credit these three opinions finds ample support in the record. Stillings also argues that the ALJ ignored a compensation and pension examination performed by clinical psychologist Dr. Sandra Jensen at the VA Medical Center in June 2011. (Tr. 588-96). The ALJ was not, however, required to discuss every shred of evidence in the record. *See Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012). In any event, Dr. Jensen's findings actually support the ALJ's RFC assessment in that Dr. Jensen determined that Stillings had satisfactory functioning, no reduction in reliability or productivity, only an occasional decrease in work efficiency, and only intermittent periods where she could not perform occupational tasks. (Tr. 596).

Accordingly, for these reasons, the ALJ did not misevaluate the opinion evidence in the record, and the opinions he relied upon provide substantial evidence in support of his RFC assessment. Stillings' second objection to the ALJ's decision is thus without merit.

## **CONCLUSION**

For the foregoing reasons, Stillings' motion for judgment on the pleadings (Dkt. No. 10) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 15) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated: June 5, 2018
Buffalo, New York

*/s/ Michael J. Roemer*
MICHAEL J. ROEMER
United States Magistrate Judge